OPINION OF THE COURT
Jones, J.
There is in this record, after excising all evidence which depends for its probative worth and relevance on testimony of the accomplices, sufficient independent proof to meet the requirements for corroboration under CPL 60.22 (subd 1).
On June 6, 1977, about 10:00 p.m., defendant entered O’Con-nor’s Grocery Store oh Judson Street in Albany, New York. He had been in the store previously and was known to James O’Connor, the proprietor. After he had been on the premises 5 or 10 minutes defendant asked where the toilet paper was. At the time of his inquiry he was standing in the rear of the store, about two feet from the counter on which were stacked 8 or 10 packages of toilet paper, four rolls to a package. O’Connor, offering to get the toilet paper, came around the checkout counter and proceeded to the back of the store where defendant was standing and the toilet paper was located. Defendant took a roll of the toilet paper and followed O’Con-nor back to the front of the store.
Just before O’Connor reached the checkout counter, Roger Lee Nelson, who was not known to O’Connor, stopped him with a gun and announced, "This is a stickup.” Defendant exclaimed, "Oh, he’s got a gun, he’s got a gun”, and addressing Nelson, added, "Don’t shoot me, Mister. I’m only a customer.” Thereupon Nelson ordered defendant to take out O’Connor’s wallet. Defendant reached into O’Connor’s right rear pocket and removed the wallet. O’Connor grabbed the wallet from defendant and Nelson took it from O’Connor. In the meantime Henry Edge who accompanied Nelson and was also unknown to O’Connor had gone behind the checkout counter and emptied the cash register. Nelson and Edge then ran out of the store. There were some teen-agers outside. As two of them started after the robbers, defendant who had come outside cautioned them, "Don’t chase him. He’s got a gun and it’s loaded.” O’Connor went to the call box where he called the police who immediately came to the store.
After the police had completed their on-the-scene investigation at the grocery store, they explained to defendant that, inasmuch as he was a witness to the crime, they would like to *237 take a written statement from him as to what he had observed. Defendant offered to come down to the police station if the police would pick him up at 9 Wilkins Avenue where he said that he lived. About 11:15 p.m. the police went to 9 Wilkins Avenue and found defendant who accompanied them to the police station where he gave a written statement. Both defendant and O’Connor, who had also given a statement, viewed police department photographs in an attempt to identify the two robbers. Neither was able to make an identification although pictures of Nelson and Edge were included in the photographs displayed.
On July 1, 1977 the police arrested Nelson and Edge on an unrelated charge. As Nelson was being booked he was informed that he, Edge and defendant had been implicated in the robbery of O’Connor’s Grocery Store, whereupon Nelson asked to make a statement. After learning that Nelson had given a statement, the next day Edge also expressed a desire to make a statement regarding the O’Connor robbery. Nelson and Edge stated in substance that they, with defendant, had planned the robbery of the grocery store at defendant’s cousin’s house at 9 Wilkins Avenue; that their plan called for defendant to enter the store first to divert O’Connor, who had some trouble with his eyes, by calling him to the rear of the store to get some toilet paper and for Nelson, with a gun furnished by defendant, and Edge then to enter the store; that Edge was to take the money out of the cash register while Nelson held the gun; that after the robbery had been completed all three returned to defendant’s cousin’s house at 9 Wilkins Avenue where the proceeds of the robbery were divided, and Nelson and Edge then left.
After a jury trial at which defendant’s statement and the statements of Nelson and Edge were received in evidence and both Nelson and Edge testified, defendant was found guilty of one count of robbery in the second degree and acquitted of another. The Appellate Division affirmed the judgment of conviction.
Only one issue of any substance is tendered on the appeal to our court. Defendant contends that the inculpatory testimony of Nelson and Edge, concededly accomplices in the criminal transaction as the trial court charged, was not sufficiently corroborated by independent proof to meet the requirements of CPL 60.22 (subd 1), which provides: "A defendant may not be convicted of any offense upon the testimony of an accom *238 plice unsupported by corroborative evidence tending to connect the defendant with the commission of such offense.” The People rely for such corroborative evidence on three items of proof: the presence and conduct of defendant in the grocery store, what is characterized as defendant’s deliberate failure to identify the photographs of Nelson and Edge, and defendant’s return to 9 Wilkins Avenue and his participation in the division of the robbery spoils.
The mandate of the statute is that there shall be evidence, in addition to that furnished by the accomplice, "tending to connect the defendant with the commission” of the crime. And the role of the additional evidence is only to connect the defendant with the commission of the crime, not to prove that he committed it. The accomplice testimony, if credited by the jury, may serve the latter purpose, provided that there is other proof to satisfy the "tending-to-connect” requirement. In the present case our attention is focused on the sufficiency of the nonaccomplice evidence.
To meet the statutory mandate the corroborative evidence must be truly independent; reliance may not to any extent be placed on testimony of the accomplice for to do so would be to rely on a bootstrap. "The independent evidence must be material evidence other than that of the accomplice and must fairly and reasonably tend to connect the defendant with the commission of the crime * * * It may not depend for its weight and probative value upon the testimony of the accomplice” (People v Kress, 284 NY 452, 460; «emphasis in original). If there is such independent evidence of connection, that evidence will serve to lend support to the testimony of the accomplice that the defendant was involved in the criminal transaction. It will counter any inference that the accomplice, without warrant, sought for reasons of his own to implicate the defendant — the risk to which the statute is addressed. The objective of the statute is not to require bolstering of the testimony of the accomplice as a witness or to lend credibility to the details of his testimony; rather the purpose of the statute is to protect the defendant against the risk of a motivated fabrication, to insist on proof other than that alone which originates from a possibly unreliable or self-interested accomplice (People v Daniels, 37 NY2d 624). It is for this reason that the so-called corroborative evidence must stand on its own. To permit the testimony of the accomplice himself to import meaning or significance into the independent proof *239 would furnish no assurance that the independent proof was not itself subject to the very untrustworthiness against which the statute seeks to protect.
Turning, then, to the present case, we conclude that no reliance may properly be placed on the independent proof that defendant failed to identify the photographs of his accomplices or that he was at 9 Wilkins Avenue when the police called for him. In both instances the probative worth, even the relevance of the proof, depends entirely on testimony furnished by the accomplices whose testimony it is necessary to "corroborate”. If the oral and written testimony of Nelson and Edge be excised there is no proof that defendant knew either of them or otherwise had any reason to recognize them or their pictures. That being so his failure to identify the photographs shown him by the police has no probative worth or relevance. Similarly, without the testimony of the accomplices there is no proof with respect to any division of the spoils of the robbery or defendant’s participation therein, or that 9 Wilkins Avenue was anything more than an address at which, the police had been told by defendant that he could be found and where they in fact found him. Although part of the narrative, the proof with respect to 9 Wilkins Avenue is wholly nonindicative with respect to the crime charged without the linking testimony of the accomplices.
We are left then with the testimony concerning defendant’s presence and conduct at the scene of the crime. We conclude, in the circumstances of this case, that the independent proof in this regard suffices to meet the command of the statute. It is pertinent to restate that the function of the independent evidence is not to bolster the details to which the accomplice has testified, but to give reasonable assurance that defendant has not been improperly implicated in the criminal transaction. So, recently, in People v Cunningham (48 NY2d 938) we held that where a defendant was charged with having made a sale of controlled substance to an accomplice, independent proof that the accomplice had sent money to the defendant and that it had been received by him about the time of the alleged sale met the statutory requirement. It was the facts of payment and of receipt of money which sufficed to connect the defendant with the commission of the crime, without any reference to the accomplice’s testimony as to the purpose for the transfer of the money.
We agree with defendant’s contention that, inasmuch as *240 there could have been an innocuous explanation for his being in the grocery store, proof of his mere presence there would not necessarily be sufficient in the circumstances of this case.* There is more here, however, than mere presence on the scene. O’Connor’s testimony was that defendant, standing at the back of the store, but two feet from the counter where toilet paper was openly stacked, asked where the toilet paper was located. Defendant’s inquiry succeeded in drawing O’Con-nor’s presence and attention away from the checkout counter. Defendant orally drew attention to the fact that Nelson had a gun. Without a moment’s hesitancy he executed Nelson’s order to remove O’Connor’s wallet from his rear pocket. As the robbers fled it was defendant who followed them out to the street and cautioned two teen-agers who would have chased after them not to do so because one had "a gun. It is significant that defendant added explicitly that the gun was loaded, something which an innocent bystander could have only surmised.
The determinative question is not whether this independent proof conforms to and bolsters Edge’s story of the planning and execution of the robbery — obviously it does that. The critical issue is whether the conduct of defendant, objectively evaluated independent of the coloration supplied by Edge’s testimony, tends to connect defendant with the commission of the robbery of O’Connor’s Grocery Store.
It may, of course, be said that each of the particulars of this independent proof, taken separately and without reference to the accomplice testimony, is innocent and nonindicative. It is also fair to say, however, that the fact that defendant drew O’Connor to the rear of the store on what appears to have been a pretext inquiry, that as an apparent bystander he volunteered an escalating reference to the gun held by the robber, that he promptly co-operated with the gunman in extracting O’Connor’s wallet, that unbidden he followed the departing robbers to the street and then discouraged any pursuit of them by statements not only that one had a gun but that it was loaded, taken cumulatively, could support a reasonable inference that he was an adjunct to the robbery. *241 The independent proof therefore constituted, in the words of the statute, "evidence tending to connect the defendant with the commission” of the robbery.
We have examined defendant’s other contentions and find them to be of no merit for the reasons stated in the memorandum at the Appellate Division (70 AD2d 740).
Accordingly, the order of the Appellate Division should be affirmed.
Chief Judge Cooke and Judges Jasen, Gabrielli, Wachtler, Fuchsberg and Meyer concur.
Order affirmed.

 Presence at the scene of the crime alone might suffice in another case, as for example, a case in which there was no plausible hypothesis therefor other than that the defendant was a likely participant in the criminal transaction, or, even if there were an innocent explanation therefor, if the circumstances of the crime itself were otherwise such as to import corroborating significance.